IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:25-CV-252-BO-BM

ASMAA HASHEM,                          )
                                       )
         Plaintiff,                    )
                                       )
    v.                                 )
                                       )    O R D E R
PARK COMMUNICATIONS, LLC d/b/a/        )
MILLENNIUM PRINT GROUP,                )
REALTIME STAFFING SERVICES,            )
LLC d/b/a/ RESOURCE MFG,               )
                                       )
         Defendant.                    )

This matter is before the Court on defendants' motions to dismiss [DE 7]; [DE 11]. Plaintiff Hashem has responded [DE 14]; [DE 17]. The time for reply has elapsed, and defendant Park Communications has replied [DE 16]. A hearing was held before the undersigned on September 24, 2025. In this posture, the motions are ripe for ruling. For the following reasons, the motions to dismiss are granted.

## BACKGROUND

Real Time Staffing Services, LLC, doing business as Resource MFG (RMFG), is a third-party staffing agency. [DE 8, p. 1]. RMFG assists Park Communications, LLC, doing business as Millennium Print group (MPG). *Id.* RMFG, the staffing agency, placed Hashem to work at MPG, which manufactures collectible trading cards. Hashem alleges her supervisor and coworkers intimidated her in the workplace. [DE 1, ¶ 33].

Hashem alleges that Amer Alabsi, her supervisor, regularly gave her "bizarre looks." *Id.* at ¶ 9. One day, he saw Hashem by a piece of manufacturing equipment just as she discovered mismatched trading cards. *See id.* at ¶ 10. He asked for the cards, and Hashem felt uncomfortable.

*Id.* at ¶ 11–12. Hashem asked to transfer to a team under a different supervisor, and was moved from the black team, which Alabsi supervises, to the red team, supervised by someone else. *Id.* at ¶ 13–14. Alabsi monitored Hashem from afar. *Id.* at ¶ 15, 22, 24. He shifted workers around so that Hashem would sometimes have to informally return to his oversight. *See id.* at ¶ 21–25.

Hashem voiced her discomfort to a coworker, who told Alabsi, and the conduct escalated. *Id.* at ¶ 26. A coworker named Salah pointed at Hashem and then pointed to his own neck and mimed strangling himself. *See id.* at ¶ 31. Concurrently, a coworker named Ussama looked at her while he repeatedly struck the side of a machine he was working on. *Id.* at ¶ 32. Hashem took these gestures as threats to beat or kill her unless she quit her job. *Id.* at ¶ 33. Hashem discovered later that Salah and Ussama are Alabsi's cousins. *Id.* at ¶ 36. Hashem called the police because she feared for her safety, and five days later, was fired. *Id.* at ¶ 35. She believes they intended to force her to leave her job because of her race, Egyptian. *Id.* at ¶ 56.

Hashem sued for race discrimination and retaliation under 42 U.S.C. § 1981, hostile work environment, wrongful termination in violation of public policy, negligent and intentional infliction of emotional distress, and negligent retention and supervision.

## ANALYSIS

A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. See Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard does not require detailed factual allegations, *ACA Fin. Guar. Corp. v.*

*City of Buena Vista, Virginia*, 917 F.3d 206, 212 (4th Cir. 2019), but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

### I. Defendant MPG's Motion to Dismiss

Plaintiff asserted seven claims against defendant MPG: (1) race discrimination and (2) retaliation under 42 U.S.C. § 1981; (3) hostile work environment; (4) wrongful termination in violation of public policy; (5) negligent and (6) intentional infliction of emotional distress; and (7) negligent retention and supervision. Defendant MPG moved to dismiss all claims. [DE 7].

(1) *Race Discrimination under 42 U.S.C. § 1981*

> To succeed on a § 1981 claim, "a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006). A plaintiff must also show that the interference with a contractual interest would not have happened but for the plaintiff's race. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Thus, to survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to those legal requirements.

*Nadendla*, 24 F.4th at 305 (*Comcast* citation changed to long form). In *Nadendla*, the plaintiff alleged that her employer "forced out one or more other physicians of Indian origin and removed their clinical privileges unjustifiably" and "treated her differently than Caucasian physicians similarly situated." *Id.* The Fourt Circuit affirmed dismissal of this complaint for failure to state a

3

claim because these allegations were conclusory—no factual assertion supported an inference that her employer's adverse actions against her were motivated by race. *Id.*

Plaintiff Hashem alleges in her complaint that her coworkers' conduct—the scrutiny she endured at work, the threatening gestures, and her termination—were based on her race. [DE 1]. However, she provides no factual allegations to connect her termination or any other aspect of the coworkers' conduct with her race. Her allegations are conclusory and fall short of the pleading standard outlined by *Twombly,* 550 U.S. 544, and *Iqbal,* 556 U.S. 662.

(2) *Retaliation under 42 U.S.C. § 1981*

To state a claim for retaliation under 42 U.S.C. § 1981, a plaintiff must allege that: (i) the plaintiff engaged in protected activity; (ii) the plaintiff suffered adverse action; and (iii) there is a causal nexus between the protected activity and the adverse action. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217–18 (4th Cir. 2016). "A prima facie retaliation claim under 42 U.S.C. § 1981 has the same elements" as a Title VII retaliation claim. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015). An employee engages in protected activity under both Title VII and 42 U.S.C. § 1981 when they oppose conduct that they reasonably believe constitutes race discrimination. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009) ("When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the [discrimination]").

For an employee's conduct to be a protected activity, it must signal opposition to unlawful discrimination, so that a reasonable employer would understand the employee intended to assert rights protected by anti-discrimination law. *See Johnson v. Global Language Ctr.*, No. 21-1638, 2023 WL 3645055 (4th Cir. May 25, 2023) (holding that an employee's email to employer did not

4

constitute protected activity because it "amounted to personal gossip" and was not intended to oppose discrimination, even though it explicitly stated that the plaintiff had been a victim of continuous sexual harassment and she feared retaliation); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (protected activity includes conduct that "reasonably opposes" unlawful employment practices). If the employee's conduct does not clearly or reasonably convey opposition to race discrimination, it does not qualify as protected activity under either Title VII or § 1981. *See id.; Crawford*, 555 U.S. at 277.

Hashem contends that she engaged in a protected activity by requesting "a transfer to a new team and contact[ing] the police for protection." [DE 1, ¶ 59]. However, to survive a 12(b)(6) motion, her complaint would have to allege facts supporting an inference that these actions conveyed her opposition to race discrimination. If her actions did not communicate to her employer that she was opposing race discrimination, they were not protected activities. *Id.* Hashem does not allege having reported race discrimination to anyone, and her acts—requesting a transfer and calling the police based on a fear of violence or harassment from her coworkers—do not automatically implicate race discrimination. Without further factual allegations, Hashem's assertion that she was terminated because of her race is conclusory and fails to state a claim on which relief can be granted.

(3) *Hostile Work Environment*

The elements of a hostile work environment claim "are the same under either § 1981 or Title VII." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001).

> To prevail on a hostile work environment claim, a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's protected characteristic; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.

5

*Guessous*, 828 F.3d at 221 (cleaned up). Hashem's hostile work environment claim fails for the same reason as her other § 1981 claims—her allegations that the unwelcome conduct was based on her race are conclusory. Her complaint alleges that Alabsi, who is not Egyptian, subjected her to higher scrutiny "than similarly situated employees not of Egyptian" descent. [DE 1, ¶ 49]. Although this allegation connects the coworkers' unwelcome conduct to her race, it does not do so plausibly. *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015) ("While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is *consistent* with discrimination, it does not alone support a *reasonable inference* that the decisionmakers were motivated by bias.") (emphasis in original). Without further factual assertions plausibly connecting the supervisor's and coworkers' conduct to her race, Hashem fails to state a claim.

Alternatively, the unwelcome conduct was not sufficiently severe to alter Hashem's conditions of employment.

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Allegations of isolated threatening conduct can only evidence a hostile work environment when the conduct was especially severe. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("isolated incidents" are not enough "unless extremely serious"). "In measuring the severity of harassing conduct, the status of the harasser may be a significant factor. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015). [A] supervisor's power and authority invests his or her harassing conduct with a particular threatening character." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998)

6

Hashem's allegations that her supervisor, Alabsi, gave her "bizarre looks," and that he asked her to hand him mismatched cards, are certainly too thin to alter the conditions of her employment. Plaintiff attempts to inflate the apparent frequency of the alleged threatening conduct by mentioning the "bizarre looks," and attempts to inflate the severity by attributing unwelcome conduct to her supervisor in addition to coworkers at her level. [DE 1, ¶ 9]. Nevertheless, the only substantial allegation regards the coworkers' threatening gestures: Hashem's coworker Salah looked at her while he "pointed to his neck as if he was strangling it," and at the same time, her coworker Ussama looked at her while he struck the side of a machine. [DE 1, ¶ 30–33]. Because this episode regarding Salah and Ussama describes the only alleged conduct amounting to anything more than looking at the plaintiff the wrong way, it is the only isolated incident that could potentially give rise to a hostile work environment.

While the coworkers' gestures may have been physically threatening, they were not sufficiently frequent or severe to support a hostile work environment claim. The isolated instance of coworkers exhibiting physically aggressive behavior from across the room could not have reasonably interfered with plaintiff's work performance and is not enough to render her work environment hostile.

(4) *Wrongful Termination in Violation of Public Policy*

To state a claim for wrongful termination, an employee has the burden of pleading that his "dismissal occurred for a reason that violates public policy." *Imes v. City of Asheville*, 163 N.C. App. 668, 670, *aff'd*, 359 N.C. 182, (2004) (citing *Considine v. Compass Grp. USA, Inc.* 145 N.C. App. 314, 317 (2001)).

> There is no specific list of what actions constitute a violation of public policy. However, wrongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the

7

> employer's request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy.

*Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 693 (2003) (cleaned up) (citing *Ridenhour v. Int'l Bus. Machines Corp.*, 132 N.C. App. 563, 568–69 (1999)). The complaint asserts that *Bigelow v. Town of Chapel Hill*, 227 N.C. App. 1, 10–11 (2013) supports her claim, which is based on retaliation for her request to transfer to a new team and for contacting the police. [DE 1, ¶ 71].

"[A]t the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353 (1992). *Bigelow* concerned four public policy violations: wrongful termination under the Retaliatory Employment Discrimination Act and the Occupational Safety and Health Act of North Carolina; wrongful termination for engaging in protected union activities; wrongful termination for filing discrimination grievances; and wrongful termination in violation of the North Carolina Constitution. 227 N.C. App. at 11–13. Each of these grounds was based on a specific North Carolina statute.

While plaintiff need not *necessarily* provide a statute to support her wrongful discharge claim, she must at least identify the public policy grounds which her employer violated. When a plaintiff fails to allege with specificity how a defendant's conduct is "in violation of North Carolina public policy," the claim should be dismissed. *See Considine*, 145 N.C. App. at 321–22. Hashem's complaint provides no public policy grounds on which her wrongful termination claim is based, and the Court cannot identify any grounds that would support her claim. Although Hashem's response to defendant MPG's motion to dismiss suggests that conveying threats and retaliating against persons who seek police protection are against North Carolina's public policy, these bases do not appear in her complaint, and she provides no argument that the violation of those specific public policies can support a wrongful termination claim. [DE 14, p. 14–16].

8

(5) *Negligent Infliction of Emotional Distress (NIED)*

The elements of a North Carolina NIED claim are "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304 (1990). When a complaint fails to plead facts "regarding the type, manner, or degree of severe emotional distress" that the plaintiff claims to have experienced, bare allegations of severe emotional distress are conclusory. *Cauley v. Bean*, 282 N.C. App. 443, 449–50 (2022); *see also Horne v. Cumberland Cnty. Hosp. Sys., Inc.*, 228 N.C. App. 142, 149, (2013); *Holleman v. Aiken*, 193 N.C. App. 484, (2008).

Plaintiff alleges that "as a direct result of Defendants' actions, Plaintiff suffered emotional distress that caused great anxiety and harmed her family life and careers." [DE 1, ¶ 81]. She also alleges, "[a]s a result of the conduct of Alabsi, and other employees and agents of Defendant MPG and joint-employer Defendant RMFG, and her termination, Plaintiff has been forced to undergo medical treatment and remains under medical care, and incurred medical expenses for the same." *Id.* at ¶ 45. Because Hashem makes no factual allegation about the type, manner, or degree of her emotional distress and ensuing medical difficulties, these allegations are conclusory.

(6) *Intentional Infliction of Emotional Distress (IIED)*

The elements of a North Carolina IIED claim are "(1) extreme and outrageous conduct [by the defendant], (2) which is intended to cause and does cause (3) severe emotional distress to another." *Turner v. Thomas*, 369 N.C. 419, 427 (2016) (citing *Dickens v. Puryear*, 302 N.C. 437, 452 (1981)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

9

atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986) (citing Restatement (Second) of Torts § 46 comment (d) (1965)). For the same reason as Hashem's NIED claim fails—because she did not allege facts supporting a conclusion that she suffered severe emotional distress—her IIED claim fails.

Additionally, the coworkers' alleged conduct does not rise to the level of "extreme and outrageous." Plaintiff alleges that MPG "engaged in extreme and outrageous conduct" by (a) "condoning Alabsi's and other employees' severely harassing behavior; (b) refusing to remedy the discrimination against Plaintiff despite her repeated complaints;" and "(c) fabricating a pretextual rationale to terminate Plaintiff" for engaging in a protected activity. [DE 1, ¶ 85]. North Carolina courts have rejected claims based on conduct more severe than this. *See Hogan*, 79 N.C. App. at 493-94 (coworker's conduct in screaming and shouting at the plaintiff, calling her names, and throwing menus at her was not sufficiently extreme and outrageous); *Hartsell v. Duplex Prods. Inc.*, 123 F.3d 766, 773 (4th Cir. 1997) ("insensitive, immature, and even insulting" sexual harassment was not sufficiently extreme and outrageous). Plaintiff's allegations that her supervisor looked at her bizarrely and that her coworkers made vaguely physically aggressive overtures from across the room cannot sustain her IIED claim.

(7) *Negligent Retention and Supervision*

The elements of a negligent retention and supervision claim are "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 249–50 (4th Cir. 2000). Racially motivated harassment and retaliation are not common law torts in North Carolina which can satisfy the first element of a negligent

retention claim. *See, e.g., McLean v. Patten Communities, Inc.*, 332 F.3d 714, 719 (4th Cir. 2003). Hashem cannot rely on the federal statutory causes of action which she asserts here for race-based harassment or retaliation. In fact, because Hashem fails to state any claim in her complaint, none of the torts she alleges therein, like NIED or IIED, can be the basis for her negligent retention claim.

Hashem also fails to establish the second element of a negligent retention claim. Although Hashem went to another supervisor and requested a transfer, complained about Alabsi to a coworker, and called the police, she does not allege having told anyone any facts that reveal incompetency in her coworkers. Additionally, the complaint does not allege any basis for imputing the knowledge of the coworker to whom she complained, or the police, to her employer. At first look, it seems that the knowledge of the supervisor who granted Hashem's transfer could potentially be imputable to the employer. However, the Court need not decide that imputation question, because even if Hashem had told the supervisor the entire story that now appears in her complaint, he would not have been able to determine that any employee was incompetent or dangerous.

## II. Defendant RMFG's Motion to Dismiss

Plaintiff asserted the same claims against RMFG as she asserted against MPG. RMFG moved to dismiss only count (4) wrongful termination in violation of public policy, and count (7) negligent retention and supervision. Since plaintiff's claims against both defendants suffer from the same defects, RMFG's motion to dismiss [DE 11] is granted for the same reasons as discussed above.

## CONCLUSION

For the foregoing reasons, defendant MPG's motion to dismiss [DE 7] and defendant RMFG's motion to dismiss [DE 11] are GRANTED. Plaintiff's request for leave to amend her complaint [DE 14, p. 22] is DENIED.

SO ORDERED, this __31__ day of October 2025.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE